IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DE LAGE LANDEN FINANCIAL SERVICES, INC.,**<br>Plaintiff,<br><br>v.<br><br>**QC LABS**,<br>Defendant/Crossclaim Defendant<br><br>**and**<br><br>**TYLER AUTERA and BRIAN LANNON,**<br>Defendants and<br>Cross Claimants/Third-Party Plaintiffs,<br><br>v.<br><br>**ERIC NICOLAIDES, MATTHEW FRIEDHOFF, and WC BIO AG HOLDINGS, LLC**<br>Third-Party Defendants. | CIVIL ACTION<br><br>NO. 22-2512 |

**MEMORANDUM RE: DEFENDANTS' REQUEST FOR DEFAULT JUDGMENT**

**Baylson, J.**                                                                                           **February 28, 2023**

**I.     SUMMARY OF FACTS**

The facts of this case, while initially simple, have been complicated by a series of crossclaims and third-party claims.

   **A.     Initial Claims by De Lage Landen Financial Services**

The case was originally brought in state court by De Lage Landen Financial Services ("DLL") against Defendants QC Labs, Tyler Autera and Brian Lannon. Compl. (ECF 1). DLL claims that it leased to QC Labs certain equipment and accessories ("the DLL Lease"). Id. ¶ 6. DLL alleges that both Tyler Autera (the former COO and Vice President of QC Labs) and Brian

1

Lannon (the former CEO of QC Labs) (together, "the Individual Defendants") individually guaranteed the DLL Lease.  Id. ¶¶ 8-9; Lannon Answer (ECF 20) ¶¶ 3-4.  However, QC Labs allegedly defaulted on its rental payments, triggering accelerated payments and late charges totaling $190,728.60.  Compl. ¶¶ 11-12.  DLL alleges that the Individual Defendants did not cure the default.  Id. ¶ 14.  DLL brings four claims: two against QC Labs and one each against Autera and Lannon.  The claims are as follows:

1. Count I: Breach of Contract against QC Labs;
2. Count II: Unjust Enrichment against QC Labs;
3. Count III: Breach of Contract – Guaranty against Autera individually; and
4. Count IV: Breach of Contract – Guaranty against Lannon individually.

Id. ¶¶ 16-39.

QC Labs has not entered an appearance.  According to the Application for Entry of Default Judgment, DLL obtained default judgment against QC Labs in state court on April 15, 2022.  App. for Default J. (ECF 31) ¶ 3.  Default judgment was initially entered against Brian Lannon, as well, but was later vacated by agreement of the parties when he entered his appearance.  Oct. 18, 2022 Order Vacating Default (ECF 18).

  **B.** **Individual Defendants' Crossclaims**

Defendant Tyler Autera removed the case to this federal Court on the basis of diversity.  Notice of Removal (ECF 1).  The Individual Defendants, both now represented by the same counsel, answered DLL's Complaint, arguing that their guarantees on the lease between QC Labs and DLL were only for the 20% down payment that QC Labs paid prior to the dispute.  Lannon Answer (ECF 20) ¶¶ 6, 31, 36.  The Individual Defendants filed crossclaims against QC Labs claiming that QC Labs agreed to indemnify the Individual Defendants from all claims arising out

of their status as corporate officers. Id. ¶ 64. The Individual Defendants allege that this included their individual guarantees for the DLL Lease, as well as for unpaid rent owed to QC Labs' landlord (Trico Realty, Inc. and the Salter Family Trust, together, "the Landlord") and car leases between QC Labs and Ford Motor Co. Id. ¶¶ 68-72. The Individual Defendants allege that QC Labs now owes approximately $250,000 to its Landlord and may be subject to liability to Ford. Id. ¶¶ 60-71, 73-74. (It is unclear if litigation on the latter issue has been initiated.)

The Individual Defendants bring three crossclaims against QC Labs:

1. Crossclaim Count I: Indemnification and Advancement for the $190,728.60 damages incurred against QC Labs by DLL, the $250,000 owed to QC Labs' landlord, and the unspecified expenses owed to Ford (id. ¶¶ 80-89);

2. Crossclaim Count II: Unjust Enrichment (in the alternative) against QC Labs (id. ¶¶ 90-97); and

3. Crossclaim Count III: Declaratory Judgment that QC Labs is obligated to advance expenses and pay all damages suffered by Lannon and Autera due to any claims by any QC Labs creditor (id. ¶¶ 98-102).

As noted above, QC Labs has not entered an appearance. The Individual Defendants now seek default judgment against QC Labs for the $190,728.60 relating to DLL's claims, for the $250,000.00 related to the alleged QC Labs Landlord issue, and for $36,619.67 in attorney's fees, totaling $477,348.27. 1/4/23 App. ¶ 10.

C. **Third-Party Claims**

The Individual Defendants also bring third-party claims against Third-Party Defendants WC Bio AG Holdings, LLC, Eric Nicolaides, and Matthew Friedhoff ("the Third-Party Defendants"), who appear to be the new owners and operators of QC Labs. Lannon Answer

(ECF 20) at 22-35. Elsewhere in their filings, the Individual Defendants describe QC Labs as a "defunct entity." Jan. 27 Affidavit in Support (ECF 32) ¶ 6. The Individual Defendants allege that the Third-Party Defendants have fraudulently and improperly stripped QC Labs of its assets that should have been used to pay off QC Labs' debts, and then allegedly transferred the resulting funds to Defendant WC Bio AG Holdings instead. Lannon Answer (ECF 20) ¶¶ 9-84. While the Third-Party Defendants have not yet answered the Individual Defendants' Third-Party Complaint or entered an appearance, the Individual Defendants' request for default judgment is limited to their crossclaims against QC Labs, not their third-party claims against the Third-Party Defendants.

## II. QUESTIONS AND CONCERNS FOR THE PARTIES TO ADDRESS

The facts of this case raise a number of questions that need to be addressed before this Court can make a determination on the Individual Defendants' request for default judgment against QC Labs. To that end, the Individual Defendants shall be required to answer the questions below. The Individual Defendants shall also consult with the other parties as to how the matter should proceed as to decrees or other motions, or trial, and the parties shall file a joint proposal or, if the parties cannot agree, separate proposals no more than three (3) pages in length.

1. The Individual Defendants request default judgment for the "indemnity damages" against QC Labs in the amount of $190,728.60. App. for Default J. (ECF 31) ¶ 10. This is in relation to the claims brought by DLL against QC Labs and the Individual Defendants for the same amount. Id. at ¶ 7. However, DLL has allegedly already obtained default judgment against QC Labs in state court. Id. at ¶ 3.
    a. Was DLL awarded monetary damages by the state court?
    b. If so, were the damages paid, what amount, and by whom?

    c. Would awarding default judgment against QC Labs in favor of the Individual Defendants for the same amount requested by DLL in relation to DLL's claims result in QC Labs having to pay damages twice?

2. The Individual Defendants seek default judgment against QC Labs for $250,000 in indemnity damages from the "QC [Labs] Landlord" claims. App. for Default J. (ECF 31) ¶ 10; Lannon Answer (ECF 20) ¶ 89. However, the Individual Defendants refer to a "QC [Labs] Landlord litigation." Jan. 27 Affidavit in Support (ECF 32) ¶ 6; see also Lannon Answer (ECF 20) ¶¶ 69-71.

    a. Assuming the reference to the "QC [Labs] Landlord litigation" in the Individual Defendants' Jan. 27 Affidavit refers to a separate legal action, are the Individual Defendants party to that litigation?

    b. Assuming the Affidavit refers to a separate legal action, why are the Individual Defendants seeking declaratory judgment on that issue here rather than in the other litigation?

3. As a procedural issue, QC Labs currently appears to be managed and controlled by the Third-Party Defendants. Lannon Answer (ECF 20) at 22-23. The Third-Party Defendants likely should be included in any hearing on the Individual Defendants' Request for Default Judgment. However, none of the Third-Party Defendants has yet entered an appearance, and it is unclear whether one of them (Third-Party Defendant Matthew Friedhoff) has properly been served. A prior order that was served on Friedhoff was returned due to an insufficient address. Return Envelope (ECF 29). Can the request for default judgment be resolved without the appearance of the Third-Party Defendants?

### III.   CONCLUSION

The Individual Defendants shall respond to the Court's questions listed above.  The parties shall also confer as to the appropriate path forward and submit joint or separate proposals.  An appropriate Order follows.